**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**April 4, 2014**

# In the Court of Appeals of Georgia

A14A0452. SAULS et al. v. ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY.

ELLINGTON, Presiding Judge.

Allstate Property & Casualty Insurance Company filed this declaratory judgment action in the Superior Court of Douglas County for a determination of its obligations under a homeowner's insurance policy. The trial court granted Allstate's motion for summary judgment in part, based on its determination that the policy provides no coverage for the claims at issue, which are asserted by the parents of a girl who died as a result of a motor vehicle accident, because the policy excludes coverage for bodily injury arising out of the use of any motor vehicle. The parents of the decedent appeal, contending that their claims are based, not on the use of a motor vehicle, but on the conduct of Allstate's insureds before the accident in furnishing

alcoholic beverages at their residence to the driver and to the decedent, who were both minors. For the reasons explained below, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

The record shows the following. Debbie and Eric Sauls ("the Saulses"), individually, as the representatives of their deceased daughter, Cheyenne Sauls, and (Debbie Sauls only) as the temporary administrator of Cheyenne Sauls's estate, filed suit in the State Court of Douglas County against Todd and Justin McAllister, among other defendants. In that action for wrongful death and personal injuries, the Saulses

2

alleged the following. On the evening of February 18, 2011, sixteen-year-old Cheyenne Sauls and seventeen-year-old Jason Lark were socializing with some friends when they visited the home of seventeen-year-old Justin McAllister. At the McAllister home, Lark and Cheyenne Sauls consumed alcoholic beverages. According to the Saulses, Justin McAllister obtained alcoholic beverages for the party, and the young people consumed the beverages with the knowledge, consent, or acquiescence of Justin McAllister's father, Todd McAllister. After midnight, Lark left the McAllister home, driving his parents' vehicle, and Cheyenne Sauls and some others went along as his passengers. Lark collided with a disabled moving truck that was jutting into the roadway. Cheyenne Sauls was ejected from Lark's vehicle and sustained fatal injuries.

It is undisputed that, at the relevant time, Todd McAllister was the named insured under an Allstate Deluxe Plus Homeowners Policy. His son, Justin McAllister, was another insured person under the policy, because he was a resident of the insured property who was Todd McAllister's "relative" and/or a "dependent person in [his] care." The Family Liability Protection section of the policy provides that, "[s]ubject to the terms, conditions and limitations of [the] policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of

3

bodily injury or property damage arising from an occurrence to which [the] policy applies, and is covered by this part of the policy." An "[o]ccurrence" is defined simply as "an accident . . . resulting in bodily injury or property damage."

In addition, in the Guest Medical Protection section, the policy provides that

Allstate will pay the reasonable expenses incurred for [specified medical expenses where the] . . . expenses [are] incurred and the services performed within three years from the date of an occurrence causing bodily injury to which [the] policy applies, and is covered by this part of the policy. Each person who sustains bodily injury is entitled to [Guest Medical Protection] when that person is: 1. on the insured premises with the permission of an insured person; or 2. off the insured premises, if the bodily injury . . . is caused by the activities of an insured person[.]

Both the Family Liability Protection section and the Guest Medical Protection section provide that Allstate does not cover bodily injury "arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." The trial court determined that all of the Saulses' claims were for their daughter's fatal injuries, that her injuries arose out of

4

the use of a motor vehicle, and, therefore, that the Saulses' claims are excluded from the policy's coverage.[1]

The Saulses contend that the McAllisters injured Cheyenne Sauls at their residence by facilitating the consumption of alcoholic beverages by the minors gathered there, which placed her in a "situation of jeopardy." They contend that Cheyenne Sauls would not have been subjected to the dangerous situation that ultimately resulted in her death but for the McAllisters' conduct. They argue that, although she was fatally injured in the car accident, her death merely added to the injuries she previously sustained at the McAllisters' home. In addition, they contend that her presence in Lark's car was merely incidental to the underlying liability of the McAllisters for placing her in a position of jeopardy. As a result, they argue, the trial court erred in ruling that their claims arose out of the use of a motor vehicle. Finally, they argue that the exclusion for injuries arising out of the use of a motor vehicle applies only when an insured exercises control over the subject vehicle and that,

---

[1] We note that the trial court denied Allstate's motion for summary judgment in part, on the issue of whether an exclusion for intentional and criminal acts applies. See footnote 3, infra. Because Allstate did not file a cross-appeal, this ruling is not before this Court.

5

because the McAllisters exercised no control over Lark's vehicle, the policy provides coverage.

Under Georgia law, "[a]n insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." (Punctuation and footnote omitted.) *Manning v. USF&G Ins. Co.*, 264 Ga. App. 102, 103 (589 SE2d 687) (2003). Although exclusions to coverage

> are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

(Punctuation and footnotes omitted.) Id.

The case of *Manning v. USF&G Ins. Co.* involved similar facts to this case. The plaintiff was injured in a car accident and filed suit against the underaged driver of the car in which she was a passenger and against the driver's mother, alleging that the mother negligently entrusted her vehicle to her son after serving him alcoholic beverages. 264 Ga. App. at 102-103. We held that a homeowner's insurance policy issued to the driver's mother by USF&G did not cover the plaintiff's claims because the policy excluded coverage for bodily injury or property damage arising out of the

6

ownership or use of motor vehicles. Id. at 107. We rejected the plaintiff's argument that the claims were not excluded because the mother's negligent act of providing alcohol to her minor son was alleged to be a concurrent cause of the plaintiff's injuries. Id. at 106-107.

As in *Manning v. USF&G Ins. Co.*, the question in this case is whether the policy at issue protects the insured against the type of harm that occurred. 264 Ga. App. at 107. Under the Allstate homeowner's insurance policy at issue, quoted above, Todd McAllister insured himself, and relatives and dependents who lived with him, against having to pay damages which they might become legally obligated to pay because of bodily injury arising from an accident *but not* damages which they might become legally obligated to pay because of bodily injury arising out of the use of a motor vehicle. Allstate also agreed to pay certain medical expenses incurred by Todd McAllister's guests, *but not* for bodily injury arising out of the use of a motor vehicle. As we have explained,

> [w]hen the phrase "arising out of" is found in an exclusionary clause of an insurance policy, we apply the "but for" test traditionally used to determine cause-in-fact for tort liability. Notwithstanding tort liability theories, the underlying facts and circumstances of the claims asserted determine whether or not a policy exclusion applies, because the exclusionary clause is focused solely upon the genesis of the underlying

7

plaintiff's claims – if those claims arose out of the excluded acts then coverage need not be provided. Claims arise out of the excluded conduct when[,] "but for" that conduct, there could be no claim against the insured.

(Citations and punctuation omitted.) *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114 (2) (722 SE2d 923) (2012).[2] Whatever the Saulses' theory of the McAllisters' liability, the claims they have asserted against the McAllisters for Cheyenne Sauls' fatal injuries would not exist but for Lark's use of a motor vehicle.

Human activities, of course, do not occur in the abstract; when there is an action, there is necessarily an actor (or actors). The motor vehicle exclusion at issue does not specify whether coverage is excluded for bodily injury "arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or

---

[2] See also *Continental Cas. Co. v. H. S. I. Financial Svcs.,* 266 Ga. at 262 (By its plain terms, an exclusion in a law firm's professional liability policy for any claim arising out of any dishonest, fraudulent, or criminal act by any of the firm's partners or employees was focused on the genesis of a particular claim. Thus, if a claim arose out of a partner's culpable conduct, then the claim was not covered. Where a former client alleged that two partners in the firm were liable for negligently supervising another lawyer in the firm, who misappropriated funds held in escrow for the plaintiff, there would be no claim against the defendants "but for" the dishonest and criminal acts of their partner. Regardless whether the defendants' alleged negligence was a concurrent cause of the harm at issue, the plaintiff's claim arose out of the partner's culpable conduct, which brought the plaintiff's claim within the scope of the exclusion.).

8

unloading of any motor vehicle or trailer" *by any person* or only for bodily injury arising out of such conduct *by an insured* (or other limited class of actors). The Saulses suggest that "this Court should adopt a rule, or re-emphasize, that ownership, control, and/or possession of the subject motor vehicle is key to finding the Motor Vehicle Exclusion applicable; otherwise, no matter how substantial or tangential the involvement of any motor vehicle, coverage can always be denied." The Saulses contend that it is reasonable for the holder of a homeowner's policy to expect that the automobile exclusion precludes coverage only for bodily injury arising out of an insured's use of a motor vehicle because such liabilities would be covered by his or her automobile insurance, which is understood to complement liability coverage in a homeowner's policy, citing *Allstate Ins. Co. v. Keillor*, 537 NW2d 589, 597 (Mich. 1995), Levin, J., dissenting. But such an expectation will not override the express terms of a policy. See *Infinity General Ins. Co. v. Litton*, 308 Ga. App. 497, 500 (2) (707 SE2d 885) (2011) (As with other types of contracts, when the terms of an insurance contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent.).[3] The homeowner's policy at issue contains many

---

[3] See Lisa A. Zakolski, 16 Ga. Jurisprudence Insurance, § 3:27 (updated March 2014).

definitions, exclusions, and other provisions where conduct is specified. In many provisions, the policy expressly limits the specified conduct to certain actors, frequently to an insured or someone who, in the context of the specified conduct, acts for or under the control of the insured.[4] In many other provisions, on the other hand, the policy does not modify the conduct with an express limitation as to the actor.[5] As

[4] For Coverage A (Dwelling Protection), Coverage B (Other Structures Protection), and Coverage C (Personal Property Protection), Allstate does not cover loss to covered property caused by "[t]he failure by any insured person to take all reasonable steps to preserve property when the property is endangered by a [covered] cause of loss;" "[a]ny substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person;" or "[i]ntentional or criminal acts of or at the direction of any insured person." For Coverage C, Allstate will cover "sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire;" C, Allstate will not cover "theft or attempted theft committed by an insured person." For Coverage X (Family Liability Protection) and Coverage Y (Guest Medical Protection), Allstate will not cover bodily injury or property damage "intended by, or which may reasonably be expected to result from the intentional act or acts or omissions of, any insured person, which are crimes pursuant to the Georgia Criminal Code;" "arising out of the rendering of, or failure to render, professional services by an insured person;" or "arising out of the past or present business activities of an insured person."

[5] For Coverage A (Dwelling Protection) and Coverage B (Other Structures Protection), Allstate does not cover loss to covered property caused by "[w]ar or warlike acts, including[,] but not limited to, insurrection, rebellion or revolution;" "theft;" or "vandalism." For Coverage C (Personal Property Protection), Allstate will cover "sudden and accidental direct physical loss" to covered property caused by "[r]iot or [c]ivil [c]ommotion, including pillage and looting during, and at the site of, the riot or civil commotion," or "[v]andalism and [m]alicious [m]ischief." For

10

to those provisions, any reasonable reader would understand that the identity of the actor was not relevant. We find no basis for concluding, therefore, that "by an insured" is an implied modifier in the motor vehicle exclusion.[6]

Because the Saulses seek medical expenses and other damages for their daughter's bodily injury that arose out of the use of a motor vehicle, there is no coverage under either the policy's Family Liability Protection or Guest Medical Protection. *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114 (2) (722 SE2d 923) (2012); *Manning v. USF&G Ins. Co.*, 264 Ga. App. at 106-107. This does not mean, of course, that the McAllisters are not liable for Cheyenne Sauls's injuries. See *Manning v. USF&G Ins. Co.*, 264 Ga. App. at 107 ("We emphasize . . . that the question on appeal is not whether [the insured] is liable for [the injured party's]

---

Coverage C, Allstate will not cover "theft in or from the residence premises while under construction . . . until the dwelling is completed and occupied." For Coverage X (Family Liability Protection) and Coverage Y (Guest Medical Protection), Allstate will not cover bodily injury or property damage "arising out of the ownership, maintenance, use, occupancy, renting , loaning, entrusting, loading or unloading of aircraft" or of specified types of "watercraft away from an insured premises."

[6] Cf. *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. at 111 (homeowner's insurance policy provided that coverage "did not apply to bodily injury arising out of the ownership, maintenance, use, loading or unloading of motor vehicles owned or operated by or rented or loaned to [the insured]") (punctuation omitted).

injuries, but whether [the insured's] homeowner's insurance protects her against the type of harm that occurred.") (citation omitted). The trial court did not err in granting summary judgment in part in Allstate's favor on these issues.

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*