[Cite as *Allstate Ins. Co. v. Bowman*, 2018-Ohio-4171.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

ALLSTATE INSURANCE COMPANY,

    PLAINTIFF-APPELLEE,

                                  CASE NO. 17-18-05

    v.

KEVIN BOWMAN, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-

                                  **O P I N I O N**

JOSEPH OLIPHANT, ET AL.,

    DEFENDANTS-APPELLANTS.

---

**Appeal from Shelby County Common Pleas Court**
**Trial Court No. 16CV000158**

**Judgment Affirmed**

**Date of Decision:    October 15, 2018**

---

APPEARANCES:

    *John F. McLaughlin* **for Appellants, Joseph & Anita Oliphant**

    *Edwin J. Hollern* **for Appellee, Allstate Insurance Company**

**SHAW, J.**

{**¶1**} Defendants-Appellants, Joseph and Anita Oliphant (collectively referred to as "the Oliphants"), appeal the May 14, 2018 judgment of the Shelby County Court of Common Pleas, granting the motion for summary judgment filed by Plaintiff-Appellee, Allstate Insurance Company ("Allstate"). On appeal, the Oliphants claim that the trial court erred in finding the motor vehicle exclusion clause in Allstate's House & Home policy did not provide coverage for their claims against its insured, Defendant-Appellee, Kevin Bowman.

*Relevant Facts*

{**¶2**} On April 22, 2015, Michelle Schuster caused an automobile accident in a construction zone in Butler County, Ohio, where Joseph Oliphant and Amber Rooks were pedestrians working at the time. Schuster was operating her own automobile and was reportedly impaired. As a result of the accident, Joseph Oliphant suffered serious physical injuries and Rooks was fatally injured. Allstate's insured, Bowman, allegedly slipped drugs into Schuster's beverage and/or supplied Schuster with marijuana, marijuana metabolite and/or Alprazolam, which she ingested prior to the accident.

{**¶3**} Joseph Oliphant and his wife, and the Estate of Amber Rooks, filed lawsuits against Bowman alleging that he caused or contributed to Schuster

becoming impaired before she operated her own vehicle on the day of the accident.[1]

Upon being named a defendant in these lawsuits, Bowman tendered his defense to

Allstate, his homeowner's insurance carrier.

*Procedural History*

**{¶4}** On July 19, 2016, Allstate filed a complaint for declaratory judgment

in Shelby County, where its insured Bowman resides, seeking a determination from

the trial court that it is not obligated to defend or indemnify Bowman or anyone else

for damages or injuries arising out of the April 22, 2015 automobile accident caused

by Schuster. Bowman, the Oliphants, the Estate of Rooks, and the Ohio Bureau of

Worker's Compensation were named as defendants.

**{¶5}** On October 17, 2016, the proceedings were stayed upon Bowman filing

a Notice of Chapter 7 Bankruptcy.

**{¶6}** On November 6, 2017, Allstate filed a motion to reactivate the case

upon receiving an order from the United States Bankruptcy Court lifting the stay for

the purpose of the trial court deciding the insurance coverage issue. The trial court

subsequently placed the case on the active docket.

---

[1] The record indicates that the Oliphants filed their lawsuit in Butler County, Ohio (*Joseph Oliphant, by and through his Legal Guardian, Anita Oliphant, et al. v. Michelle Shuster, et.al*, Butler County Case No. 2006 04 0953); and the Estate of Amber Rooks filed its lawsuit in Hamilton County, Ohio (*Estate of Amber Rooks by the Adminstratrix Shannon Dethlefs, Individually and as the Personal Representative of The Estate of Amber Rooks, Deceased v. Michelle Schuster, et al.*, Hamilton County Case No. A1602365). These cases were pending at the time Allstate instituted the instant action.

**{¶7}** On March 7, 2018, Allstate filed a motion for summary judgment asserting that it did not have a duty to defend or indemnify Bowman against the Oliphants' and the Estate of Rooks' claims because its House & Home Policy contains a provision which excludes coverage for losses arising out of the use of any motor vehicle. Allstate further asserted that Bowman's conduct with respect to causing Schuster's impairment was an intentional act which was not an "occurrence" to trigger coverage and is also specifically excluded by the intentional acts exclusion in the policy. The Oliphants filed a response opposing the motion for summary judgment. Allstate filed a sur-reply.[2]

**{¶8}** On May 14, 2018, the trial court issued its decision granting summary judgment in favor of Allstate, specifically finding that the claims asserted were excluded under the motor vehicle exclusion in Allstate's House & Home policy with Bowman. The trial court further found its decision on the matter with respect to the application of the motor vehicle exclusion dispositive and it need not consider whether the claims were barred from coverage under the intentional acts exclusion. Therefore, the trial court did not address the application of the intentional acts exclusion in its decision.

**{¶9}** The Oliphants appealed, asserting the following assignment of error.

---

[2] The Estate of Amber Rooks filed a notice of partial dismissal agreeing to be bound by any decision of the trial court regarding the declaratory judgment action filed by Allstate. Accordingly, Allstate moved for dismissal of the Estate of Amber Rooks pursuant to Civ.R. 41(A)(1)(a).

**THE TRIAL COURT ERRED TO THE PREJUDICE OF JOSEPH AND ANITA OLIPHANT IN GRANTING SUMMARY JUDGMENT IN FAVOR OF ALLSTATE INSURANCE COMPANY AND HOLDING THAT ALLSTATE DOES NOT AFFORD LIABILITY COVERAGE TO KEVIN BOWMAN FOR THE OLIPHANTS' CLAIM.**

{¶10} In their sole assignment of error, the Oliphants' argue that the trial court erred in granting Allstate's motion for summary judgment. Specifically, they argue that the trial court erred when it found that the motor vehicle exclusion in Allstate's House & Home policy with Bowman barred their claims for recovery for the injuries Joseph Oliphant sustained as a result of the April 22, 2015 accident caused by Schuster.

*Standard of Review*

{¶11} We review a trial court's decision on a motion for summary judgment *de novo*. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this court conducts an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted).

{¶12} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the

nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. Franklin No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

*Relevant Law*

{¶13} Our task when interpreting an insurance policy is to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St. 3d 11, 17, 2016-Ohio-2913, ¶ 28, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849. "If the contract terms are clear and precise, the contract is not ambiguous and must be enforced as written." *Bluemile, Inc. v. Atlas Indus. Contractors, Ltd.*, 10th Dist. Nos. 16AP-789, 16AP-791, 2017-Ohio-9196, ¶ 14. In construing an insurance contract, the court is to look first at the plain and ordinary meaning of the language in the policy to understand the intent of the parties. *Galatis*, *supra*, 2003-Ohio-5849 at ¶ 11. Courts presume that the intent of

the parties to a contract resides in the language they chose to employ in the agreement. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St. 3d 635, 638, 1992-Ohio-28, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

**{¶14}** When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 246 (1978). "A contract cannot be unilaterally modified, and parties to a contract must mutually consent to a modification." *Hanna v. Groom*, 10th Dist. Franklin No. 07AP-502, 2008-Ohio-765, ¶ 27. "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992)(emphasis in original). The Supreme Court of Ohio has held that provisions in an insurance contract that are reasonably susceptible of more than one interpretation will be construed liberally in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, (1988), syllabus. "This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St. 3d 234, 237, 2015-Ohio-3308, ¶ 9, quoting *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 8.

*Discussion*

**{¶15}** The provisions of Allstate's House & Home Policy at issue on appeal states the following:

**Section II-Family Liability and Guest Medical Protection**

**Coverage X**

**Losses We Do Not Cover Under Coverage X:**
**1.** **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

> a) such **insured person** lacks the mental capacity to govern his or her conduct;

> b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

> **＊ ＊ ＊**

**5.** **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:

> a) a motor vehicle in dead storage or used exclusively on an **insured premises**;

> b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

> **c)** **a motorized wheel chair;**
>
> **d)** **a vehicle used to service an <u>insured premises</u> which is not designed for use on public roads and is not subject to motor vehicle registration;**
>
> **e)** **a golf cart owned by an <u>insured person</u> when used for golfing purposes;**
>
> **f)** **a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;**
>
> **g)** **lawn and garden implements under 40 horsepower;**
>
> **h)** **<u>bodily injury</u> to a <u>residence employee</u>.**
>
> **\* \* \***
>
> **"<u>Occurrence</u>"—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in <u>bodily injury</u> or <u>property damage</u>.**

(Doc. No. 1, Ex. C. Policy at 4-5, 23-24) (emphasis in original to reflect terms defined within the policy); id at 25-26 (identical exclusions for Coverage Y pertaining to Guest Medical Protection)).

**{¶16}** Notably, it is undisputed by the parties that none of the exceptions to the motor vehicle exclusion apply to the case *sub judice*. Moreover, it is also undisputed that Schuster was operating her own vehicle when she caused injury to Joseph Oliphant. In other words, there is no dispute that Kevin Bowman was not operating the vehicle that caused the accident nor is there any dispute that Bowman did not own the vehicle that caused the accident.

{¶17} The Oliphants contend that the only reasonable construction of the motor vehicle exclusion stated above is that "the" which appears before the list of terms "ownership, maintenance, use, occupancy, renting, entrusting, loading or unloading" refers *to the insured's* "ownership, maintenance, use, occupancy, renting, entrusting, loading or unloading," who in this instance is Kevin Bowman. Thus, the Oliphants' argue that because Bowman had no connection to the motor vehicle involved in the accident, the motor vehicle exclusion does not apply to preclude coverage of their claims.

{¶18} Alternatively, the Oliphants argue that the motor vehicle exclusion is ambiguous as to whether "the" limits the exclusion to "ownership, maintenance, use, occupancy, renting, entrusting, loading or unloading" of the motor vehicle by the insured, and as such must be construed in their favor.

{¶19} For its part, Allstate contends that the motor vehicle exclusion is unambiguous and the plain language specifically excludes coverage for losses arising from the "ownership, maintenance, use, occupancy, renting, entrusting, loading or unloading" of *any* motor vehicle.

{¶20} In construing the language of the exclusion, the trial court found the language unambiguous and observed that "[t]he Oliphants would have this court add to the Allstate auto exclusion clause the phase "by the insured" or something similar to that effect," which it declined to do. (Doc. No. 70 at 6). The trial court

found that "the automobile exception clause of Allstate's insurance policy excludes coverage for the claim damages or injuries result[ing] from the use of any automobile. The fact that Bowman had no connection with the motor vehicle and that his conduct may have been separate and independent of the operation of the motor vehicle does not abrogate the auto exclusion clause." (Id.).

**{¶21}** In its decision granting summary judgment in favor of Allstate, the trial court observed that no relevant Ohio authority had addressed this precise issue raised by this set of facts, and examined case law from other jurisdictions.

**{¶22}** In *Sauls v. Allstate Prop. & Cas. Ins. Co.*, teenagers Cheyenne Sauls and Jason Lark were socializing with some friends when they visited the home of another teenager, Justin McAllister. *Sauls,* 326 Ga. App. 821, 821-22, 757 S.E.2d 455, 456-057 (2014). At the McAllister home, Lark and Sauls consumed alcoholic beverages obtained by McAllister, which they also consumed with the knowledge, consent, or acquiescence of McAllister's father, Todd McAllister. *Id.* After midnight, Lark left the McAllister home, driving his parents' vehicle. Sauls and others were passengers in Lark's vehicle. *Id.* Lark collided with a disabled moving truck that was jutting into the roadway. *Id.* Sauls was ejected from Lark's vehicle and sustained fatal injuries. *Id.*

**{¶23}** Debbie and Eric Sauls, individually and as the representatives of their deceased daughter's estate, filed suit against Todd and Justin McAllister, among

other defendants, alleging similar claims to the Oliphants' against Bowman in the underlying Butler County case. *Sauls,* 326 Ga. App. at 821-22.  The Saulses also advanced arguments in favor of coverage, specifically that "the exclusion for injuries arising out of the use of a motor vehicle applies only when an insured exercises control over the subject vehicle and that, because the McAllisters exercised no control over Lark's vehicle, the policy provides coverage."  *Id*. at 823.

{¶24} The language of the motor vehicle exclusion implicated in *Sauls* is identical to the language used in Allstate's House & Home Policy at issue in the instant case.  *Sauls,* 326 Ga. App. at 823.  In rejecting the Saulses' contention that "by an insured" is an implied modifier in the motor vehicle exclusion, the court in *Sauls* examined the specific language chosen in the exclusion and ascertained the intent of the parties to the insurance contract to determine that:

> **Under the Allstate homeowner's insurance policy at issue, quoted above, Todd McAllister insured himself, and relatives and dependents who lived with him, against having to pay damages which they might become legally obligated to pay because of bodily injury arising from an accident *but not* damages which they might become legally obligated to pay because of bodily injury arising out of the use of a motor vehicle.  Allstate also agreed to pay certain medical expenses incurred by Todd McAllister's guests, *but not* for bodily injury arising out of the use of a motor vehicle.**

*Id*. at 824.  Thus, the court in *Sauls* found that the motor vehicle exclusion clearly and unambiguously barred coverage of the Saulses' claims for bodily injury against McAllister.

**{¶25}** Other jurisdictions have construed the same motor vehicle exclusion in a similar manner to bar coverage under a homeowner's policy when the facts involve the impairment of a third party at the insured's home which allegedly contributes to the bodily injury or death of another when the third party subsequently has a motor vehicle accident while operating his or her own vehicle. *See e.g.*, *Allstate v. Essiam*, U.S. Dist. Ct. Conn. No. 3:15-CV-00180 (May 27, 2016)(stating that "when the motor vehicle exclusion refers to 'any motor vehicle' it is referring to an indiscriminate motor vehicle of whatever kind. This means the motor vehicle exclusion applies to any car whatsoever, regardless of the motor vehicle owner's identity or relationship with the insured"); *Allstate v. Miller*, 732 F.Supp.2d 1128 (Hawai'i 2010); *Allstate Ins. Co. v. Keillor*, 203 Mich. App. 36, 42, 511 N.W.2d 702, 705 (1993).

**{¶26}** Underpinning the rationale set forth by the courts in these cases is that basic concept that "[r]isks associated with motor vehicle accidents are not normally risks associated with home or property ownership" *Miller*, *supra*, 732 F.Supp.2d 1128 at 1137. "Generally speaking, a homeowner's insurance policy is designed to protect against losses arising out of the ownership or use of a particular residential building and its appurtenant structures, not liability connected to the operation of motor vehicles on public highways. The risk of liability from the use of a motor

vehicle is traditionally and properly covered by motor vehicle policies, not by homeowner's insurance." *Keillor*, *supra*, Mich. App. at 42.

{¶27} We agree with the rationale set forth by the trial court and the other jurisdictions stated above and find that the terms in Allstate's motor vehicle exclusion in its House & Home policy are clear and precise. Therefore, we conclude that the motor vehicle exclusion is not ambiguous and must be enforced as written, which is to exclude from coverage bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer arising out of *any* motor vehicle. Notably, the Oliphants have not provided us with any persuasive authority to find either that the motor vehicle exclusion is ambiguous or that the language can be reasonably construed to apply only to those vehicles to which the insured has some connection. Accordingly, we do not find that the trial court erred in granting summary judgment in favor of Allstate and we overrule the assignment of error.

{¶28} Based on the foregoing, we overrule the assignment of error and affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**WILLAMOWSKI, P.J., concurs in Judgment Only.**

**/jlr**