[Cite as *Veller v. K.B.*, 2025-Ohio-2802.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Giselle Veller, Administrator of the
Estate of Ashton Copeland, et al.,

Court of Appeals No. WD-24-066

Appellants

Trial Court No. 2022CV0320

v.

K.B., a minor, et al.,

**DECISION AND JUDGMENT**

Appellees

Decided: August 8, 2025

* * * * *

Anthony J. Glase, for appellants.

Lucas P. Baker, attorney for intervenor-appellee Allstate
Vehicle and Property Insurance Co.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellants, Giselle Veller, individually, and as administrator of the estate of Ashton Copeland (collectively, "Veller"), from the

September 3, 2024 judgment of the Wood County Court of Common Pleas. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Veller sets forth two assignments of error:

> 1. The Trial Court erred by granting Intervenor, Allstate Property and Casualty Insurance's, Motion for Summary Judgment by concluding, as a matter of law, that the Allstate Home Insurance Policy's "motor vehicle exclusion" excluded coverage for the claims asserted against the Allstate insured Defendants, Tamyra Byrd and K.B., because the Court failed to consider the Appellant's ordinary negligence claim(s) independent of the motor vehicle.

> 2. The Trial Court erred by failing to consider the egregious facts of this case that create genuine material questions as to whether Appellants' damages did not "arise out of the use of a motor vehicle" but instead resulted from a dangerous instrument and therefore the intent of the motor vehicle exclusion as provided in the Allstate Home Insurance Policy "Family Liability Protection" section is not applicable and the exclusion does not apply.

## Background

{¶ 3} On September 25, 2021, Veller's son, Ashton Copeland, was a passenger in a car driven by then 16-year-old K.B., when K.B. lost control of the car. The car hit a utility pole and rolled over into a ditch. Copeland was killed. At the time of the accident, K.B. was driving a car owned by his sister and legal guardian, Tamyra Byrd. Also at that time, K.B. and Byrd resided with Carl Davis, Byrd's fiancé, in Davis' Haskins, Ohio home.

{¶ 4} On January 12, 2024, Veller filed a third amended complaint in the trial court against, inter alia, K.B. and Byrd, and alleged four claims against K.B. and/or Byrd: (1) negligence and recklessness by K.B. for failing to drive the car in a safe and

2.

reasonable manner and follow traffic laws, and negligent entrustment by Byrd of her car to a known negligent/reckless driver; (2) survival action and wrongful death (negligence); (3) intentional and negligent infliction of emotional distress; and (4) other related causes of action. In these claims, Veller alleged that K.B. and/or Byrd's actions and inactions were the direct and proximate cause of Copeland's death and Veller's damages.

{¶ 5} Allstate Vehicle and Property Insurance Company ("Allstate") filed an intervenor's complaint seeking a declaration that it owed no duty to defend or indemnify K.B. and Byrd under an Allstate homeowner's insurance policy ("the Policy") issued to Davis.

{¶ 6} On June 27, 2024, Allstate filed its motion for summary judgment in which it argued that neither K.B. nor Byrd qualified as an "insured person" under the Policy because neither was a relative of Davis, the only named insured, and the Policy excluded coverage for bodily injuries arising out of the ownership, maintenance, use or entrustment of any motor vehicle. Allstate noted Ohio courts test whether the instrumentality causing the bodily injury was a motor vehicle, and courts routinely held that when there was a causal connection between the bodily injury and a motor vehicle, the claims fell within the motor vehicle exclusion in a homeowner's policy. Allstate cited numerous cases including *Bennett v. Waidelich*, 2005-Ohio-2489 (6th Dist.), which it maintained was applicable and controlling. Allstate asserted there was no dispute that the damages sought from K.B. and Byrd arose out of the ownership, use, and entrustment of a motor

3.

vehicle as the car driven by K.B. and owned by Byrd was the instrumentality that caused Copeland's death for which Veller sought damages.

{¶ 7} On July 30, 2024, Veller responded that K.B. and Byrd were both insureds under the Policy. Veller argued the Policy provided coverage for "Family Liability Protection" which, subject to various exclusions and conditions, covered "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence."

{¶ 8} Veller asserted that K.B. was an "insured person" according to the Policy which stated that an insured person included any person under the age of 21 under the care of the insured person, and K.B. was 16 years old on September 25, 2021, living in the Haskins home with Davis and Byrd. Veller argued that Byrd and Davis both supervised K.B., taught K.B. to drive, gave K.B. permission to drive the car while they were at the Haskins home on September 25, 2021, and K.B. viewed Davis as a father figure. Veller noted the Policy did not define "care," and although Allstate claimed Davis did not care for K.B. because Davis was not a legal guardian, Veller contended "care" was a very broad term and any ambiguity had to be construed against Allstate.

{¶ 9} Veller also asserted that Byrd was an "insured person" according to the Policy because she, as Davis' fiancée, had lived in the Haskins home fulltime since 2019, and "[t]his finding [was] consistent with the spirit of the contract, the intended parties, and fairness." Veller submitted "Byrd should be considered an insured person under the plain language of 'Family Liability Protection[,]' as . . . Family is not defined and

4.

therefore an ambiguity against Allstate." Veller further argued that Byrd should be considered a beneficiary under the Policy inasmuch as "[t]he 'true intent and purpose' of the policy was to provide insurance to the home and its residents, i.e. Tamyra Byrd."

{¶ 10} Veller further argued, as to Allstate's instrumentality test, that the instruments who caused the bodily injury were K.B. and Byrd, as their ordinary negligent acts caused Copeland's death, not the car. Veller asserted it was well settled that there may be more than one proximate cause of an injury.

{¶ 11} In addition, Veller contended that the Policy's language was ambiguous regarding negligent supervision and "motor land vehicle" as one paragraph referenced negligent supervision/entrustment of a "motorized land vehicle" but another paragraph used "motorized vehicle." Veller claimed the "additional term, 'land' . . . [was] not defined and not consistent with other sections of the [P]olicy. This create[d] an ambiguity that [was to be] construed against Allstate."

{¶ 12} Last, Veller argued the damages stemmed from ordinary negligence at the insureds' premises and the motor vehicle exclusion in the Policy did not apply. Veller asserted the car "involved in the accident was not a 'motor vehicle' but was a weapon or object and therefore it was not excluded. Further, the vehicle/weapon was located at the [insured] Haskins residence and K.B. had permission to take it from the residence and [it caused Ashton's death,] therefore coverage should apply." Veller argued that at common law, parents were not ordinarily liable for damages caused by their child's wrongful conduct, but parents may be liable for their child's tortious conduct if the injury

5.

committed by the child was a foreseeable consequence of the parents' negligent action. Veller submitted the facts were to be construed in her favor, so Allstate's motion should be denied.

{¶ 13} On September 3, 2024, the trial court issued its judgment granting Allstate's motion for summary judgment. The court found that although there was some question as to whether K.B. and Byrd could be considered insured persons under the Policy, as a matter of law the Policy excluded coverage for Veller's claims asserted against K.B. and Byrd. The court referred to Section II, paragraph 5 of the Policy and cited several cases where the motor vehicle exclusion in homeowner's insurance policies were applied in similar circumstances.

{¶ 14} Veller appealed the trial court's judgment.

**Standard of Review**

{¶ 15} An appellate court reviews summary judgment de novo, using the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). The court can only grant a motion for summary judgment when the moving party shows (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to one conclusion, which is adverse to the nonmoving party, who has the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(C).

6.

## The Policy

{¶ 16} The Policy provides, in pertinent part:

House & Home Policy

. . .

5. Insured person(s) - means you and, if a resident of your household:
a) any relative; and
b) any person under the age of 21 in your care.

. . .

Section II - Family Liability and Guest Medical Protection
Family Liability Protection-Coverage X
Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, we will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

. . .

Losses We Do Not Cover Under Coverage X:

1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
a) such insured person lacks the mental capacity to govern his or her conduct; . . .

. . .

5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle . . .

. . .

7. We do not cover bodily injury or property damage arising out of:
a) the negligent supervision by any insured person of any person; or

7.

b) any liability statutorily imposed on any insured person; arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle . . . which is not covered under Section II of this policy.

## Law - Insurance Policies

{¶ 17} Insurance policies are contracts which are construed using the same rules as other written contracts. *Universal Underwriters Ins. Co. v. Shuff*, 67 Ohio St.2d 172, 173 (1981). When policy language is clear and unambiguous, its interpretation is a matter of law and the court may not "resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 167 (1984). The words and phrases used in a policy must be given their natural and commonly accepted meaning. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982). Ambiguous provisions, especially those purporting to exclude or limit coverage, must be construed strictly against the insurer and liberally in favor of the insured. *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, ¶ 11. Yet, "the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992).

{¶ 18} We will address Veller's assigned errors together.

## First Assignment of Error

{¶ 19} Veller argues the trial court failed to consider that the ordinary negligence and wrongful death claims asserted against K.B. and Byrd did not arise out of the use of the motor vehicle. Veller asserts the car was a non-essential element of the cause of the

8.

injuries - the independent, non-related negligent acts of K.B. and Byrd, mainly their conscious disregard for the rights and safety of others, resulted in Copeland's injuries and death. Veller cites *Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, ¶ 12 (6th Dist.), in support (A wrongful death claim "is a statutory claim, permitting recovery of damages for the decedent's estate, where 'the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued.'"). Veller contends Byrd's negligent conduct is concurrent but separate to the injuries "arising out of the use of a motor vehicle" and therefore the motor vehicle exclusion does not apply.

{¶ 20} Veller submits that Byrd, as K.B.'s guardian, had heightened duties to control, monitor and guide K.B.'s actions, and Byrd had a duty to protect others from K.B.'s reckless conduct and dangerous propensities, and to ensure K.B. was aware of and followed Ohio driving laws. Veller argues Byrd breached her duties owed to Copeland by consciously disregarding Ohio laws for 16-year-old drivers and K.B.'s history of extreme reckless driving. Veller contends that K.B. got a speeding ticket for going 110 mph in July 2021, one month after he got his driver's license, then Byrd consented to his wrongdoing and essentially rewarded K.B. by buying him a car in August 2021. Veller asserts that on the night of Copeland's death, K.B. was driving two non-family members, in violation R.C. 4507.071, which Byrd knew and or should have known.

{¶ 21} Veller further argues that K.B. had a special relationship with Copeland as the "driver/child passenger" and owed a heightened duty of care to Copeland, which

9.

included maintaining himself in a non-reckless manner and complying with Ohio driving laws regarding speed limits and passenger limits. Veller asserts K.B. breached his duties by consciously disregarding the rights and safety of others, including Copeland, and this reckless conduct was independent of the car accident and was separate, actionable negligence, which first occurred in the Haskins home on September 25, 2021.

{¶ 22} Veller submits the cases cited by the trial court are distinguished because of the special relationship and known reckless conduct of K.B., Byrd and Davis, which were independent of the car accident.

## Second Assignment of Error

{¶ 23} Veller argues the trial court failed to consider the egregious facts which created genuine material questions as to whether Veller's "damages did not 'arise out of the use of a motor vehicle' but instead resulted from a dangerous instrument and therefore the intent of the [Policy's] motor vehicle exclusion . . . [in the] 'Family Liability Protection' section is not applicable and the exclusion does not apply." Veller asserts the Policy does not define motor vehicle and further, the instruments that caused Copeland's bodily injury were K.B. and Byrd "and their dangerous instruments. It was their negligent acts that caused Ashton's death, not the vehicle."

{¶ 24} Veller contends that K.B. was not using the car in an ordinary fashion as it was a weapon or object and therefore the motor vehicle exclusion should not apply. Veller maintains that this is also consistent with the aggravated vehicular assault criminal charge to which K.B. pleaded guilty. Veller submits the car was a dangerous instrument

10.

which was kept at the insured property and K.B. took it from the insured property and it caused Copeland's death. Veller insists that at the very least, the facts are to be construed in her favor and the motor vehicle exclusion should not apply.

**Allstate's Response**

{¶ 25} Allstate argues that neither K.B. nor Byrd qualify as an insured person under the Policy as they are not relatives of Davis, as defined by Black's Law Dictionary, since they are not related to Davis by blood or marriage, and Byrd is K.B.'s legal guardian and custodian, so K.B. was not in Davis' care. Therefore, Allstate contends K.B. and Byrd are not entitled to coverage under the Policy for the claims alleged against them.

{¶ 26} Allstate further asserts that irrespective of whether K.B. or Byrd qualify as insured persons, the Policy excludes coverage because the instrumentality which caused Copeland's death and the damages sought by Veller arise out of the motor vehicle owned by Byrd, entrusted to K.B. by Byrd and operated by K.B. Allstate maintains that courts find that bodily injuries arising out of the ownership, maintenance and use of a motor vehicle are covered by an auto insurance policy and are excluded by a homeowner's policy. In support, Allstate cites to *Allstate Ins. Co. v. Bowman*, 2018-Ohio-4171 (3d Dist.), in which the insured, who was issued a homeowner's policy, allegedly gave or slipped drugs to the tortfeasor while at the insured's home. *Id.* at ¶ 2. The tortfeasor then drove her own car and hit two pedestrians. *Id.* The pedestrians sued the insured alleging that he caused or contributed to the tortfeasor being impaired. *Id.* at ¶ 3. The insurer

11.

filed a declaratory judgment action. *Id.* at ¶ 4. The motor vehicle exclusion in the homeowner's policy stated "[w]e do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." *Id.* at ¶ 15. The appellate court noted it was undisputed that none of the exceptions to the exclusion applied, as the tortfeasor was driving her own car when she hit the pedestrians, and the insured did not own and was not driving the car that caused the accident. *Id.* at ¶ 16. The pedestrians argued the only reasonable construction of the exclusion was that because the insured had no connection to the car involved in the accident, the exclusion did not apply to preclude coverage for the pedestrians' claims, or in the alternative, the exclusion was ambiguous. *Id.* at ¶ 17, 18. The court held the exclusion was clear and precise and must be enforced as written, which excluded from coverage damages arising out of the ownership, use, occupancy or entrusting of any motor vehicle. *Id.* at ¶ 27.

## Analysis

**Legal Authority**

{¶ 27} The cases cited by Veller are distinguishable, as they are not relevant to the issues presented in Allstate's motion for summary judgment nor raised by Veller in her first assigned error. The *Bowman* case, relied on by the trial court and Allstate, while relevant, is not controlling on this court. The *Bennett* case, cited by Allstate in its motion for summary judgment, is both relevant and controlling on this court.

12.

{¶ 28} In *Bennett*, 2005-Ohio-2489 (6th Dist.), a passenger in a car was injured in an automobile accident. *Id.* at ¶ 2. The car was owned and operated by a 19-year-old man, whose mother was an insured under a homeowner's insurance policy. *Id.* at ¶ 2, 4. The passenger sued, claiming the insured: permitted the son to consume alcohol in her home; failed to properly supervise or exercise reasonable control of him; and entrusted him with a dangerous instrumentality, his car, when she should have known he was intoxicated. *Id.* at ¶ 3. The insurer denied coverage for the passenger's claims based on the homeowner's policy language. *Id.* at ¶ 4. Both the passenger and insured filed for summary judgment. *Id.* The trial court, using the automobile exclusion, held the insured's allegedly negligent actions were so inextricably intertwined with the son's operation of his car that the homeowner's policy excluded coverage for the insured's actions. *Id.* at ¶ 23.

{¶ 29} On appeal, the passenger argued the insured's actions were separate and distinct from the son's operation of his car and the insured's independent actions, of allowing the son to consume alcohol and drive his car while intoxicated, created a separate causation which, together with the son's actions, proximately caused the passenger's injuries. *Id.* This court ruled "[c]learly, pursuant to [the automobile exclusion in the policy] there is no coverage for bodily injury arising out of [the son's] use of his motor vehicle." *Id.* at ¶ 22. Thus, this court found the passenger's injuries, which arose as a result of the insured's allegedly negligent entrustment and supervision of the son regarding the use of his car, were precluded from coverage. *Id.* at ¶ 26.

13.

**Applicability**

{¶ 30} Based upon our review of the record and the applicable law, including *Bennett*, we find that the trial court did not err when it granted Allstate's motion for summary judgment and concluded, as a matter of law, that the motor vehicle exclusion in the Policy excluded homeowner's insurance coverage for Veller's claims against Byrd and K.B. arising out of the use of the motor vehicle in the accident.

{¶ 31} We will assume, without deciding, that Byrd and K.B. qualify as insureds under the Policy. The Policy language states there is no coverage for, inter alia, bodily injury or damages: from the intentional acts or omissions of an insured person; arising out of the ownership, use, occupancy or entrusting of any motor vehicle; and arising out of the negligent supervision by any insured person of any person or any liability statutorily imposed on an insured person or arising from the ownership, use, occupancy or entrusting of any motorized land vehicle.

{¶ 32} We find that this Policy language clearly and unambiguously excludes coverage for injuries and damages due to, or based on: intentional or criminal acts/omissions; use, ownership, occupancy or entrusting of a car; and negligent supervision. All of Veller's claims against K.B. and Byrd arose out of K.B.'s use of a car which caused Copeland's death, and/or Byrd's alleged negligent entrustment of a car to K.B. for his use, which caused Copeland's death. Thus, Veller's claims against K.B. and Byrd are excluded from coverage under the plain terms of the Policy.

14.

**{¶ 33}** Accordingly, we find Veller's first and second assignments of error not well-taken.

**Conclusion**

**{¶ 34}** The September 3, 2024 judgment of the Wood County Court of Common Pleas is affirmed.  Veller is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See, also,* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.