[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *World Harvest Church v. Grange Mut. Cas. Co.,* Slip Opinion No. 2016-Ohio-2913.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2913

WORLD HARVEST CHURCH, APPELLEE, *v.* GRANGE MUTUAL CASUALTY COMPANY, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *World Harvest Church v. Grange Mut. Cas. Co.,* Slip Opinion No. 2016-Ohio-2913.]

*Insurance—Commercial liability insurance policy—Abuse or molestation exclusion—Vicarious liability—Attorney fees—Postjudgment interest.*

(No. 2014-1161—Submitted October 13, 2015—Decided May 12, 2016.)

APPEAL from the Court of Appeals for Franklin County,

No. 13AP-290, 2013-Ohio-5707.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we address whether an abuse or molestation exclusion in a commercial liability insurance policy excludes coverage for an award of damages based on the insured's vicarious liability for a claim arising from its employee's physical abuse of a child in the insured's care and custody. We

conclude that it does.  Because we hold that coverage is excluded, we also conclude that the policy does not provide coverage for an award of attorney fees or postjudgment interest arising from the award of damages.

## RELEVANT BACKGROUND

*The Underlying Lawsuit*

{¶ 2} In May 2006, Michael and Lacey Faieta initiated a civil action against World Harvest Church and Harvest Preparatory School (collectively, "WHC") and WHC's employee, Richard Vaughan, for claims arising from an incident involving the Faietas' two-and-a-half-year-old son, A.F., who attended WHC's daycare service.

{¶ 3} The Faietas dropped off A.F. for daycare in the morning of January 17, 2006. Sometime that afternoon, Vaughan took over for A.F.'s regular classroom teacher.  When Mr. Faieta picked up his son that evening, he noticed bright red marks and abrasions on his son's rear end, back, and upper thigh areas.  The Faietas' complaint alleged that A.F. complained of pain and that he stated that Vaughan had beaten him with a knife.[1]  The Faietas contacted WHC to report A.F.'s injuries and

---

[1]  The Tenth District Court of Appeals summarized the circumstances surrounding the injuries as follows:

> To put into context WHC's conduct after A.F.'s injuries, we first briefly summarize the circumstances surrounding A.F.'s injuries, construing the evidence and all reasonable inferences in plaintiffs' favor.  A.F. was potty trained and therefore not susceptible to diaper rash, and he had no history of allergies, sensitive skin, or rashes.  He had no marks on his body either when he was dropped off at the Cuddle Care classroom on the morning of January 17, 2006 or later, when his morning teacher left for the day at 1:00 p.m. Shortly before 6:00 p.m., Michael Faieta picked up his daughter and then picked up A.F. in their respective classrooms.  A.F. was in the Cuddle Care classroom alone with Vaughan, who had taken over for the afternoon teacher sometime after 4:00 p.m. According to Mr. Faieta, A.F. was anxious and upset, his eyes were red, and he clung to his father's side as his belongings were gathered.  Vaughan did not give Mr. Faieta any paperwork or say that A.F. had experienced any problems that day, and he did not indicate he had seen any sort of rash or other marks on A.F.'s body.
>
> Upon their using the restroom on the way out of the building, Mr. Faieta observed the numerous fresh cuts, welts, and red marks on A.F.'s back, buttocks and thighs.  The marks were linear and consistent with being hit with a ruler.  In

request remedial action against Vaughan. By letter dated January 26, 2006, WHC, through its headmaster, told the Faietas not to come to WHC or its school under threat of WHC's filing trespass charges.

{¶ 4} The Faietas' complaint asserted claims for assault and battery against Vaughan, claims for negligence and intentional infliction of emotional distress against Vaughan and WHC, and claims for negligent hiring and supervision and respondeat superior against WHC. The Faietas requested an award of compensatory damages, punitive damages, and attorney fees, plus interest and costs.

{¶ 5} WHC admitted in response to the complaint that Vaughan was a daycare provider for WHC and that at all relevant times, he had acted within the scope and course of his employment. But WHC denied that any acts by Vaughan were unlawful, negligent, or otherwise actionable.

{¶ 6} At the time of the incident, WHC was insured under a commercial policy issued by appellant, Grange Mutual Casualty Company ("Grange"), including a general liability policy and umbrella policy. In response to the Faietas' complaint, WHC submitted a claim under the Grange policies asking Grange to defend the Faietas' lawsuit. Grange agreed to defend the matter and retained a law

---

the car on the way home approximately an hour later, A.F. told his father that Vaughan had "spanked" him with a "knife." At home, upon being shown pictures of various objects, A.F. pointed to a ruler as the object used to "spank" him. After A.F.'s mother, Lacey Faieta, arrived home and looked at the marks on A.F., she spoke with their pediatrician and the police, who advised her to take A.F. to Children's Hospital. The emergency physicians at Children's Hospital found A.F.'s injuries to be consistent with physical abuse, and the matter was forwarded to Franklin County Children Services ("FCCS") and the Columbus Police Department ("CPD") for investigation.

*Faieta v. World Harvest Church*, 10th Dist. Franklin No. 08AP-527, 2008-Ohio-6959, ¶ 26-27.

firm to do so but also expressly reserved its right to deny coverage and refuse payment of any claim.

{¶ 7} The case proceeded to a trial, and the jury entered a verdict in favor of the Faietas and against WHC and Vaughan. The jury awarded the Faietas $764,235 in compensatory damages from WHC, $5 million in punitive damages, and attorney fees. The jury awarded $134,865 in compensatory damages from Vaughan and $100,000 in punitive damages.

{¶ 8} According to the jury's answers to interrogatories, the jury found that the Faietas' damages were directly and proximately caused by Vaughan's intentional harm or battery of A.F., intentional infliction of serious emotional distress by Vaughan "and/or World Harvest," and WHC's negligent supervision of Vaughan as an employee.

{¶ 9} Final judgment was entered in favor of the Faietas in the total amount of $2,871,431.87, of which WHC was solely liable for $2,789,066.87. Vaughan was found to be primarily liable for $82,365, "an amount for which World Harvest [was] secondarily liable."

{¶ 10} On appeal, the Tenth District Court of Appeals affirmed the verdict and award. *Faieta v. World Harvest Church*, 10th Dist. Franklin No. 08AP-527, 2008-Ohio-6959. The parties did not appeal the decision to this court and, instead, settled the claims for $3,101,147.

*The Grange Lawsuit*

{¶ 11} In July 2009, WHC filed suit against Grange over a dispute in coverage under the commercial insurance policies. Specifically, WHC alleged that Grange improperly refused to indemnify it for any portion of the judgment awarded to the Faietas. WHC asserted claims seeking relief for breach of contract, respondeat superior, and lack of good faith in the denial of coverage and seeking a declaration that WHC was entitled to payment from Grange for all or some of the

4

amount WHC had paid to resolve the Faietas' lawsuit. Grange defended, asserting that the insurance policies did not provide coverage.

{¶ 12} In its commercial general liability policy, Grange agreed to pay those sums that WHC, the insured, would become legally obligated to pay as damages because of "bodily injury" or "property damage" as those terms were defined in the policy. The policy applied only to "bodily injury" caused by an "occurrence," which the policy defined as an "accident." But the policy excluded from coverage "bodily injury" that was "expected or intended from the standpoint of the insured."

{¶ 13} Two endorsements further modified the coverage for bodily injury. An endorsement regarding corporal punishment stated that the exclusion for bodily injury did not apply if the injury resulted from "corporal punishment to [WHC's] student administered by or at the direction" of the insured. A second endorsement, titled the "Abuse or Molestation Exclusion" ("the abuse exclusion"), further modified the coverage for "bodily injury" and stated:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> 2. The negligent:
> a. Employment;
> b. Investigation;
> c. Supervision;
> d. Reporting to the proper authorities, or failure to so report, or
> e. Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

**{¶ 14}** On cross-motions for summary judgment, the court entered judgment in favor of WHC, finding that Grange was obligated to indemnify WHC in the amount of $1,472,677 plus interest, representing the compensatory damages, attorney fees, and postjudgment interest awarded to the Faietas. The court further held that Grange was not responsible to indemnify WHC for the punitive damages awarded to the Faietas.

**{¶ 15}** Both WHC and Grange appealed to the Tenth District Court of Appeals, which affirmed the trial court's judgment to the extent that it ordered Grange to indemnify WHC for (1) $82,365 in compensatory damages for which WHC was secondarily liable, (2) $693,861, representing the full amount of attorney fees awarded, and (3) "that portion of the postjudgment interest award on these amounts." 2013-Ohio-5707, ¶ 69. The appellate court also affirmed the trial court's conclusion that Grange had no obligation to cover any amount of the punitive damages awarded. *Id.* But the appellate court reversed the portion of the trial court's judgment ordering Grange to indemnify WHC for the remaining compensatory damages.

**{¶ 16}** Both Grange and WHC moved for reconsideration. The appellate court denied Grange's motion but, on WHC's request, modified its decision to affirm that Grange was obligated to pay for the postjudgment interest assessed on the *full* amount of the judgment. 10th Dist. Franklin No. 13AP-290, ¶ 23 (May 29, 2014) (on reconsideration).

**{¶ 17}** We accepted Grange's discretionary appeal but denied WHC's cross-appeal. 140 Ohio St.3d 1521, 2014-Ohio-5251, 20 N.E.3d 729. Thus, the only propositions for this court's consideration are the following:

(1) A commercial liability policy containing an Abuse or Molestation Exclusion which excludes damages arising out of abuse "by anyone" of any person in the care, custody or control of any insured, as well as the negligent employment or supervision of an abuser, eliminates coverages of sums awarded based on the insured's vicarious liability for its employee's abuse of a child in the insured's care and custody.

(2) When attorney's fees are awarded solely in conjunction with non-covered conduct, "compensatory" attorney's fees are not covered damages under liability insurance policies.

(3) A liability insurance policy's supplementary payments clause cannot be reasonably construed as an agreement to pay post-judgment interest on non-covered claims.

## ANALYSIS

*Scope of the Appeal*

{¶ 18} The first issue presented is whether the abuse exclusion bars coverage under the policy for the sum awarded based on WHC's vicarious liability for claims arising from its employee's physical abuse of a child.

{¶ 19} Grange contends that all damages arising out of the abuse are excluded from coverage regardless of the cause of action asserted against WHC. WHC counters that only those damages awarded because of the direct liability of a bad actor and the direct liability of the employer would be excluded from coverage, not those damages based on the employer's vicarious liability for its employee's abuse. Central to WHC's claim is its assertion that the exclusion contains no language excluding damages awarded based on the insured's vicarious liability.

**{¶ 20}** WHC also contends that (1) Vaughan's actions constituted "excessive corporal punishment" rather than abuse and are therefore covered by the policy and (2) the abuse exclusion is intended to exclude only sexual abuse, not physical abuse, from coverage. Although presented as counterarguments, these contentions raise issues that we declined to address when we denied discretionary review of WHC's cross-appeal. Because we did not accept the cross-appeal, these arguments are outside the scope of this appeal.

**{¶ 21}** Indeed, the appellate court squarely addressed these arguments when it concluded that the exclusion unambiguously applied to physical abuse and not just sexual abuse. 2013-Ohio-5707, ¶ 45-47. "The plain and ordinary meaning of the word 'abuse,' which is not defined in the [Grange] policies, is, as pertinent here, physical maltreatment," *id.* at ¶ 45, and therefore, "WHC's narrow construction of the term 'abuse' as only 'sexual abuse' is, thus, belied by the above authorities which define the term more broadly to include physical abuse," *id.* at ¶ 48. Additionally, "it was conclusively determined in the personal-injury case that Vaughan's battery constituted abuse of the Faietas' minor child." *Id.* at ¶ 48.

**{¶ 22}** The appellate court similarly rejected WHC's argument that the corporal-punishment endorsement permitted coverage and therefore concluded that "the 1993 corporal punishment endorsement does not change the fact that claims concerning Vaughan's battery and WHC's negligent supervision are excluded under the policy's CGL abuse or molestation exclusion." *Id.* at ¶ 52. These conclusions are not before this court on Grange's appeal, and therefore, we do not review them.

**{¶ 23}** Additionally, the appellate court concluded that the policies did not provide coverage for damages awarded based on Vaughan's direct liability for battery and his intentional infliction of emotional distress. *Id.* at 54. That holding and the argument that the acts do not constitute an "occurrence" under the policies are also not before us, as WHC concedes.

8

**{¶ 24}** The scope of this appeal is limited to whether the abuse exclusion eliminates coverage for damages awarded for WHC's vicarious liability for abuse. More specifically, the scope of this appeal is limited to the appellate court's conclusion that Grange was obligated to indemnify WHC for $82,365 in compensatory damages that were awarded based on WHC's vicarious liability for Vaughan's intentional infliction of emotional distress resulting from the abuse of the Faietas' son. [2]

**{¶ 25}** The appellate court concluded that "unless corporate management committed the intentionally wrongful conduct, the corporate insured will not be denied coverage on the basis of an employee's intentional tort," and that "WHC's corporate management did not commit Vaughan's intentionally wrongful conduct." 2013-Ohio-5707, ¶ 37. In other words, as the appellate court later clarified, even if Vaughan acted intentionally, and thus his conduct was excluded from coverage because it was not accidental and thus not an "occurrence," coverage turned on whether Vaughan's act was intentional from the perspective of WHC, the entity seeking coverage. 10th Dist. Franklin No. 13AP-290, ¶ 7 (May 29, 2014) (on reconsideration). And because WHC did not intend the act, Grange could not deny coverage. The appellate court also found that the policies did not provide coverage for injury arising from an intentional act from the perspective of the insured, and thus WHC would not be covered if the jury had found that it was directly liable for intentional infliction of emotional distress. 2013-Ohio-5707, ¶ 40.

**{¶ 26}** On reconsideration, the appellate court noted that Grange had asserted that the abuse exclusion barred coverage for WHC's vicarious liability based on Vaughan's intentional infliction of emotional distress, even if the act could

---

[2] The appellate court held that Grange's argument that "bodily injury" did not include emotional injury failed because the umbrella policy expressly included "mental anguish, mental injury or disability" resulting from bodily injury. And both the general liability and umbrella policies provided coverage for damages incurred "because of 'bodily injury,'" including emotional-distress damages. 2013-Ohio-5707, ¶ 38-39. That holding has not been challenged on appeal.

not be excluded from coverage as an intentional act (rather than a covered accidental "occurrence"). But the appellate court did not address the merits of that argument in its reconsideration decision. 10th Dist. Franklin No. 13AP-290, ¶ 7 (May 29, 2014) (on reconsideration).

**{¶ 27}** The effect of the abuse exclusion on the issue of coverage is central to the inquiry and the basis of this appeal.

*Application of the Abuse Exclusion to Vicarious Liability*

**{¶ 28}** Insurance contracts are construed by the same rules used to construe contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, *Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992).

> As we stated in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, our task when interpreting an insurance policy is to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Id*. at ¶ 11, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Moreover, "[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing *Alexander v. Buckeye Pipe Line Co*. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

*Safeco Ins. Co. of Am. v. White,* 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 17.

**{¶ 29}** "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp.* at 665. Ambiguity in the policy language is construed against

the insurer and liberally in favor of the insured, particularly when the ambiguity exists in a provision that purports to limit or qualify coverage under the insurance policy. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 11.

{¶ 30} With these principles in mind, we turn to the policy language in this case.

{¶ 31} The language of the abuse exclusion is broad. It excludes from coverage " 'bodily injury' * * * arising out of * * * [t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." It excludes from coverage actual *or threatened* abuse or molestation. And it covers actual or threatened abuse or molestation *by anyone*. The victim, however, must be in the care, custody, or control of an insured.

{¶ 32} Additionally, the abuse exclusion eliminates coverage for damages awarded for claims of bodily injury arising from the insured's negligence in employing, investigating, supervising, or retaining the bad actor, as well as from negligence in reporting, or failing to report, the abuse or molestation to the authorities.

{¶ 33} We do not find any language in the abuse exclusion that limits its application to damages awarded for an insured's direct liability. The failure to include an express denial of coverage for claims of secondary, or vicarious, liability, does not support the interpretation advanced by WHC, i.e., that the policy must therefore cover vicarious liability. Nor does it render the exclusion ambiguous.

{¶ 34} The exclusion covers a narrow category of conduct—actual or threatened abuse by anyone. But construing the exclusion to apply only to that which is clearly excluded, as we must, its plain wording states that there is no coverage as long as the claim is for bodily injury that arises out of the abuse by anyone of any person while in the care, custody, or control of the insured.

{¶ 35} We find that the abuse exclusion simply does not limit the exclusion to claims for bodily injury arising from *direct* liability, while failing to exclude claims for bodily injury arising from secondary, or vicarious, liability, for the same conduct. Indeed, the language in the exclusion is simple and unambiguous: there is *no* coverage for any injury arising from abuse or molestation. To hold otherwise, we would have to insert language into the exclusion. We may not do so, particularly when the terms of the policy are clear and unambiguous. " 'Where a written agreement is plain and unambiguous it does not become ambiguous by reason of the fact that in its operation it will work a hardship on one of the parties thereto and corresponding advantage to the other.' " *S & M Constructors, Inc. v. Columbus,* 70 Ohio St.2d 69, 71, 434 N.E.2d 1349 (1982), quoting *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947), paragraph one of the syllabus.

{¶ 36} To hold that the exclusion applies to claims of direct liability but not to vicarious liability would require rewriting the policy language. But we refrain from infringing on freedom-of-contract principles and expanding our limited role in interpreting contract language. "A court must construe a contract against its drafter, but when the terms are unambiguous and clear on their face, the court need not look beyond the plain language of the contract to determine the rights and obligations of the parties." *Beasley v. Monoko, Inc.,* 195 Ohio App.3d 93, 2011-Ohio-3995, 958 N.E.2d 1003, ¶ 30 (10th Dist.).

{¶ 37} Here, WHC's vicarious liability arose from its admission that Vaughan acted within the scope of his employment when he committed the abusive acts while A.F. was in WHC's care, custody, and control. And those acts gave rise to the damages awarded for intentional infliction of emotional distress. Thus, the language of the abuse exclusion encompasses WHC's vicarious liability for Vaughan's intentional infliction of emotional distress arising from the abuse. Accordingly, we overrule the appellate court's conclusion that Grange is obligated

to indemnify WHC for any damages awarded based on vicarious liability for Vaughan's intentional infliction of emotional distress.

*Attorney Fees and Postjudgment Interest*

{¶ 38} In the Faietas' lawsuit, the jury also found that the Faietas were entitled to attorney fees from WHC, but not from Vaughan, and the trial court awarded attorney fees of $693,861.87. In this coverage dispute, the appellate court concluded that Grange was obligated to indemnify WHC for the entire amount of attorney fees awarded because the fees could not be allocated between the covered and noncovered claims. 2013-Ohio-5707, ¶ 59.

{¶ 39} Because the result of our decision is that no claims are covered by the insurance policies, allocation between covered and noncovered claims is unnecessary. Accordingly, there is no basis to conclude that Grange must indemnify WHC for the attorney fees awarded on noncovered claims.

{¶ 40} The appellate court initially vacated the portion of the interest award attributable to amounts not covered under the Grange policies and determined that Grange was obligated to indemnify WHC only for the postjudgment interest attributable to the portion of the judgment it determined that the policies covered. *Id.* at ¶ 60-61. On reconsideration, the appellate court modified its decision to conclude that Grange must indemnify WHC for the postjudgment interest assessed on the *full* amount of the judgment, or $229,716. 10th Dist. Franklin No. 13AP-290, ¶ 23 (May 29, 2014) (on reconsideration).

{¶ 41} The appellate court reasoned that the general liability policy did not limit coverage for postjudgment interest to a covered injury, because the policy applied to "any judgment." *Id.* at ¶ 16. The relevant policy language states:

> We will pay, with respect to * * * any "suit" against an
> insured we defend:
>       * * *

> All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

The policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury' * * * *to which this insurance applies* are alleged." (Emphasis added.) The appellate court concluded that this definition was satisfied.

**{¶ 42}** We must, however, view the insurance contract as a whole. *Safeco Ins. Co. of Am.,* 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 17. As discussed above, pursuant to the abuse exclusion, the policy does not apply to bodily injury arising out of abuse. Because the Faietas' suit is not one that alleges bodily injury to which the insurance applies, it is not one for which Grange must pay interest on a judgment. Accordingly, we conclude that Grange is not obligated to pay any amount of postjudgment interest awarded to the Faietas.

## CONCLUSION

**{¶ 43}** For the foregoing reasons, we conclude that the language of Grange's abuse exclusion bars coverage for an award of damages based on WHC's vicarious liability for intentional infliction of emotional distress arising from Vaughan's abuse of A.F. while in WHC's care and custody. Because we hold that coverage is excluded, and there are no remaining covered claims for damages awarded in the Faietas' lawsuit, we also conclude that the policy does not provide coverage for an award of attorney fees and postjudgment interest. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Robert P. Rutter, for appellee.

Tucker Ellis, L.L.P., Irene C. Keyse-Walker, and Benjamin C. Sassé; Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and James R. Gallagher, for appellant.

Reed Smith, L.L.P., and James M. Doerfler, urging affirmance for amicus curiae United Policyholders.

Landskroner Grieco Merriman, L.L.C., and Drew Legando, urging affirmance for amicus curiae Ohio Association for Justice.

Michael M. Neltner, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Vorys, Sater, Seymour & Pease, L.L.P., and Thomas E. Szykowny, urging reversal for amici curiae Ohio Insurance Institute and Property Casualty Insurers Association of America.

_____