[Cite as *Walker v. Albers Ins. Agency*, 2019-Ohio-1316.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JACQUELINE WALKER, on behalf of the Estate of Delores Walker, | : | APPEAL NO. C-180207<br>TRIAL NO. A-1701696 |
| | : | |
| and | | |
| | : | *O P I N I O N.* |
| JACQUELINE WALKER, individually, | | |
| | : | |
| Plaintiffs-Appellants, | | |
| | : | |
| vs. | | |
| | : | |
| ALBERS INSURANCE AGENCY, | | |
| | : | |
| Defendant, | | |
| | : | |
| and | | |
| | : | |
| WEST AMERICAN INSURANCE COMPANY, | | |
| | : | |
| and | : | |
| | | |
| LIBERTY MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 10, 2019

*The Moore Law Firm* and *Ginger S. Bock, Katzman Logan Halper & Bennett* and *Steven D. Halper*, for Plaintiffs-Appellants,

*Frost Brown Todd LLC, William H. Harter* and *Erin E. Orndorff*, for Defendants-Appellees.

**BERGERON, Presiding Judge.**

{¶1}   This insurance dispute turns on a question of timing. After a homeowner passed away, her sister (and heir) distributed the assets (including interests in the home) and closed the estate. This occurred—unfortunately for the sister—less than two weeks before a fire severely damaged the home. Under the insurance policy, this timing mattered because it meant that neither the decedent nor her heirs at that point qualified as an "insured" in the parlance of the policy. For that reason, the insurer correctly denied coverage, and we accordingly affirm the trial court's grant of summary judgment.

I.

{¶2}   This claim originates with a family home.  Jacqueline Walker, the appellant, grew up in this home along with her siblings.  After their father passed away, the ownership of this home transferred to Ms. Walker and her siblings.  Eventually, Ms. Walker's sister, Delores Walker, came to occupy the home.  In 2000, Delores (we will use first names to avoid confusion) sought the assistance of Albers Insurance Agency ("Albers") to procure insurance coverage for the home.  West American Insurance Company ("West American"), affiliated with Liberty Mutual Insurance Company ("Liberty Mutual"), issued the policy, which identified only Delores as a named insured.

{¶3}   On October 27, 2013, Dolores passed away.  The next day Jacqueline called and informed Albers of her sister's death.  Jacqueline inquired if there was anything additional that needed to be done regarding insurance coverage for the house. An agent for Albers responded that the house's coverage was paid until the end of the policy period in May of 2014, and that nothing else needed to be done at that time.  Jacqueline had no direct communications with West American or Liberty Mutual.

{¶4}   Delores died intestate, and Jacqueline subsequently initiated the probate process for her sister's estate. The estate was relatively simple, with no substantial assets other than the house.   The probate court accordingly appointed Jacqueline as the commissioner of her sister's estate on December 5, 2013, and relieved the estate from administration. The appointing documents, among other things, authorized Jacqueline to "receive and sell or distribute the personal property or proceeds thereof" and to effectuate the transfer of the real property.   After completing this process, Jacqueline was to report back to the probate court. On January 13, 2o14, she did just that.  Her report demonstrated that the assets of the estate, including the interests in the home, had been distributed, and the probate court approved that report on the same day.   This action closed the estate of Delores Walker because, at that point, nothing remained to be done from the vantage point of estate administration.

{¶5}   Less than two weeks later, in an unfortunate turn of events, a fire severely damaged the home.   After submission of a claim on the insurance policy, West American proceeded to investigate the loss and ultimately denied coverage.  West American's denial letter explained that, at the time of the fire, Delores's estate no longer had an insurable interest in the property and so no coverage extended to the loss.   The denial of coverage letter emphasized several provisions of the insurance policy itself.

{¶6}   Of central relevance to this appeal, West American featured the provisions of the policy dealing with death of the named insured (here, Delores).   That section provides that, upon the death of the named insured, "We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death[.]"  The parties do not dispute that, at least for some period of time, Jacqueline served as the "legal representative" of the estate in accordance with this provision.

3

{¶7} But they agree on little else, and that ultimately led to this lawsuit, in which Jacqueline sued Albers, West American, and Liberty Mutual, alleging, among other things, breach-of-contract, negligent-misrepresentation, and bad-faith claims. All of the defendants eventually moved for summary judgment on the claims against them, which the trial court granted in part.

{¶8} The court granted summary judgment in favor of the insurers, finding that no genuine issue of material fact existed because, at the time of the fire, neither Delores nor her estate owned the home. But with respect to Albers, the court denied summary judgment based on questions surrounding the statements made by the agency to Jacqueline regarding coverage after her sister's death. Nevertheless, Jacqueline subsequently dismissed her claims against Albers with prejudice. On appeal, Jacqueline frames a single assignment of error challenging the trial court's grant of summary judgment in favor of West American and Liberty Mutual.

## II.

{¶9} In her sole assignment of error, Jacqueline maintains that various disputes of fact precluded summary judgment, highlighting the agency relationship between Albers and West American, the breach-of-contract claim, Liberty Mutual's liability for its participation in the coverage denial, and the alleged bad-faith denial of the claim. We, of course, review the grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. *See, e.g., Hooten v. Safe Auto Ins. Co.*, 1st Dist. Hamilton No. C-990684, 2000 WL 640260, *1 (May 19, 2000).

### A.

{¶10} We first consider the breach-of-contract claim, which requires a foray into probate law and insurance policy interpretation guidance. We begin, as we must, with the language of the policy and the relevant provisions. Everyone agrees that the "named

insured" identified on the declarations page is Delores Walker. The policy defines "insured" to mean "you" (i.e., the named insured) and "residents of your household" who are "your relatives" or certain other dependents. The policy then covers "the dwelling on the 'residence premises' shown in the Declarations," which is the house that succumbed to the fire. Included within that coverage is certain personal property "owned or used by an 'insured' while it is anywhere in the world," as well as personal property owned by "[o]thers while the property is on the part of the 'residence premises' occupied by an insured."

{¶11} That tells us who is covered and the breadth of that coverage, but it begs the question of what happens when the named insured passes away during the life of the policy. The "Death" provision supplies the answer. It explains that the term "insured" encompasses: (a) "[a]n 'insured' who is a member of your household at the time of your death, but only while a resident of the 'resident premises' " and (b) "[w]ith respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative." The latter provision recognizes that, before the probate process gets underway, someone may have temporary custody of the property, and if so, that person qualifies as an "insured" under the policy.

{¶12} Once the probate (or other similar) process commences, it triggers the following provision: "We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death * * *." The language of the policy thus focuses our attention on a specific moment (the time of the loss) to determine the availability and scope of coverage.

{¶13} That date for us is January 23, 2014, the date of the fire. Thus, we must determine whether Jacqueline qualified as a "legal representative" at the time that this loss occurred because she did not live in the household at the time of Delores's death.

{¶14} Jacqueline suggests that the policy is ambiguous because it does not define "legal representative," and indeed, the policy stands strangely silent on that point. But we fail to view that silence as ambiguity, particularly when everyone here agrees that when the probate court appointed Jacqueline as commissioner of her sister's estate, she constituted a "legal representative" under the policy.

{¶15} Her appointment took effect on December 5, 2013, and it obligated her to "receive and sell or distribute the personal property or proceeds thereof" and to "complete these duties and report to the Court within sixty days of the date of this entry." By separate document, the probate court also on December 5 effectuated a "Certificate of Transfer" that memorialized the transfer of the real property to Delores's heirs.

{¶16} By January 13, 2014, Jacqueline reported back to the probate court with the "Report of Distribution" of the estate, memorializing the distribution of the personal property. By a judgment entry of the same date, the probate court approved the report, drawing the probate proceedings to a close. Generally, once the final accounting and distribution of the estate is approved, the estate is closed and the administrator is discharged. *See Beck v. Schmidt*, 38 Ohio App. 476, 478-79, 176 N.E. 595 (3d Dist.1930) (administratrix "discharged of her trust" after she distributed assets with court approval before the time allotted for the task); *see also In re Estate of Hudson*, 82 Ohio App.3d 422, 424, 612 N.E.2d 506 (5th Dist.1993) (probate court "closed the estate" after approval of the "final accounting"). Overlaying Ohio probate law with the terms of the policy, Jacqueline ceased being a "legal representative" of Delores's estate after January 13.[1]

{¶17} The Georgia Court of Appeals confronted a very similar scenario as it interpreted identical policy language. *See Higdon v. Georgia Farm Bur. Mut. Ins. Co.*, 204

---

[1] Both parties get somewhat sidetracked in debating whether Jacqueline had an "insurable interest" in the home. She certainly had an interest capable of insuring—but that is not the question before us. Instead, we must determine who the policy defines as the "insured."

Ga.App. 192, 419 S.E.2d 80 (1992). Like this case, the insured owned a house and then passed away. The policy provided that if the insured died, "we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death." *Id.* at 81. After the insured died in August 1989, his sons agreed to the disposition of the property in the estate and the house was transferred by deed to one of the sons in October (a transaction recorded a month thereafter). A fire swept through and destroyed the house in December 1989, prompting the deceased insured's sons to file an insurance claim.

{¶18} Although the sons tried to broaden the interpretation of "legal representative of the estate," the Georgia Court of Appeals persuasively determined that at the time of the fire, "there was no legal representative of the testator." *Id.* Because the deed had been executed and transferred at the time of the loss, and because the sons did not obtain written consent of the insurer to assign the policy, no "insured" existed per the terms of the policy.

{¶19} The Georgia Court of Appeals acknowledged, as do we, the apparent harshness of this result. *Id.* at 82. In this case, had Jacqueline waited another two weeks before transferring assets and closing the estate, she would have been the "legal representative" of the estate and the loss would have been covered. The insurers here acknowledge as much.

{¶20} But our duty is to construe the policy language as written, in light of the undisputed facts. Insurance policies must be interpreted by the same rules applied to contract interpretation generally. *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 28. We examine the policy in its entirety and presume that the language therein represents the intentions of the parties. *Id.* Where the language is clear, we cannot expand the language of the insurance policy to include coverage that falls beyond the intent of the parties to the policy. *Lovewell v. Physicians Ins.*

*Co. of Ohio*, 79 Ohio St.3d 143, 147, 679 N.E.2d 1119 (1997). Here the language of the policy only extends coverage to Delores and the legal representative of her estate. We cannot now expand the concept of "legal representative" simply because the equities tug us in that direction.

{¶21} Beyond the real property, Jacqueline also claims Western American breached by refusing to cover Delores's personal property destroyed in the fire. Even if there were personal property to be distributed after January 13 (and the probate documents evidence no such property), this also was not covered at the time of the fire, largely for the reasons explained above. Jacqueline's submission of the final report of distribution, and the probate court's approval of that, wrapped up the estate at that point. Part of Jacqueline's duties as the commissioner, per the probate documents, was to "receive and sell or distribute the personal property or proceeds thereof." If she had not completed that task, she should not have submitted the report. Moreover, Jacqueline fails to identify what undistributed personal property she believes existed at the time of the fire. We cannot speculate that certain personal property existed in order to extend the duration of her "legal representative" status when that stands at odds with the documentation that she submitted to the probate court.

{¶22} Looking at this timeline of events, the loss to all of the property, both personal and real, occurred after Dolores Walker's death, after her sister probated her estate, after the assets were distributed, and after the estate closed. While the timing of these events is certainly unfortunate from Jacqueline's perspective, the policy's coverage of Delores's interest in her real and personal property was extinguished by the time that the fire occurred.

{¶23} Our conclusion on the breach-of-contract question effectively resolves two subsidiary issues—liability for Liberty Mutual and the claim of bad faith. Liberty Mutual

8

cannot be held liable for breaching the insurance policy since we concluded that no breach occurred. Likewise, the contractual analysis precludes a finding that the insurers acted in bad faith. In Ohio, an insurer fails to exercise good faith when processing an insurance claim when the refusal to pay the claim is not based on any circumstances that reasonably justify the denial. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397 (1994). Here, the undisputed record establishes a deliberate investigation into the incident, coupled with advice of counsel, and an appropriate analysis of the policy language. Ultimately, the insurers reached an interpretation of the policy that we uphold today. That is certainly not bad faith.

B.

{¶24} Finally, Jacqueline insists that summary judgment was improperly granted as to her negligent-misrepresentation claims, the genesis of which is her phone call with Albers in the wake of Delores's death. In that call, according to Jacqueline, a representative of Albers told her that the house was insured "until May of 2014. I also asked her at that time if any changes needed to be made to the policy because my sister is now deceased, and I was told no. If any changes needed to be made, they would be made after May 2014, when I would have to renew the policy."

{¶25} We see two fundamental problems with this statement as a basis for a negligent-misrepresentation claim. First, Jacqueline never had any direct communication with the insurers regarding the coverage for the house. Negligent misrepresentation requires, among other things, that a party supply false information to another. *Phelps v. PNC Bank,* 1st Dist. Hamilton No. C-000518, 2001 WL 992081, *6 (Aug. 31, 2001). Since the insurers did not directly convey information to Jacqueline, they could not have committed some form of misrepresentation. For that reason, Jacqueline advances an

agency theory to vicariously hold West American and Liberty Mutual liable for statements that Albers made regarding the policy coverage after Delores's death.

{¶26} Assuming that Albers constituted the insurers' agent for this purpose, however, Jacqueline's dismissal of Albers with prejudice now precludes a finding of negligence on the part of the alleged principal. A principal can generally only be held liable for the acts of its agent when the agent itself can be held liable. *See, e.g., Losito v. Kruse*, 136 Ohio St. 183, 188, 24 N.E.2d 705 (1940) ("A settlement with and release of the servant will exonerate the master."); *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 21 (extinguishment of primary liability, through settlement or judgment, bars secondary liability); *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22 ("[A] principal is vicariously liable only when an agent could be held directly liable."). This is because vicarious liability flows through the agent and to the principal; no liability of a principal can be found without direct liability of the agent. It follows then, that where Albers can no longer be held directly liable, neither West American nor Liberty Mutual can be found vicariously liable for its actions. Thus, summary judgment was appropriate when the insurers made no direct statements (false or otherwise) to Jacqueline and where she has dismissed all claims against Albers.

{¶27} Second, we do not see how the communication as conveyed by Jacqueline constitutes a misrepresentation. The statement at the time was perfectly true—the agent had no way of knowing that Jacqueline would be appointed by the probate court and complete her duties before May 2014. More to the point, the agent never purports to interpret the "Death" provision of the policy, nor did she lead Jacqueline astray in this regard. To be sure, the conversation could have been more complete, but the absence of elaboration fails to transform this discussion into a misrepresentation.

**{¶28}** For all of the foregoing reasons, we conclude that the trial court properly granted summary judgment, and we therefore overrule the sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.