[Cite as *Freedom Fund v. Lvreis, Inc.*, 2022-Ohio-786.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FREEDOM FUND, LLC, | : | APPEAL NO. C-210356 |
| | | TRIAL NO. A-1902386 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| LVREIS, INC., | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Case Remanded

Date of Judgment Entry on Appeal: March 16, 2022

*Matre Law Group Co., LPA,* and *James A. Matre,* for Plaintiff-Appellee,

*McNamee & McNamee, PLL*, and *Cynthia P. McNamee*, for Defendant-Appellant.

**BOCK, Judge.**

{¶1}   Defendant-appellant LVREIS, Inc., ("LVREIS") appeals the trial court's judgment quieting the title of real property in favor of plaintiff-appellee Freedom Fund, LLC, ("Freedom Fund").

## I.      Facts and Procedure

{¶2}   Freedom Fund is an Idaho-based member-managed investment limited liability company ("LLC") created in October 2012. In December 2012, Ray Perron and Jay Greenwalt registered Freedom Fund with the Ohio secretary of state as a foreign entity. They filed a certificate of authority along with Freedom Fund's Idaho and Ohio registrations. According to the original operating agreement, Freedom Fund was managed by Perron (47.5 percent interest), Greenwalt (47.5 percent interest), and Mountain West IRA ("the trust") (5 percent interest). Its business purpose was to engage in note and/or real estate acquisition. It was to be managed "by any member individually or all members jointly."

{¶3}   There were multiple operating agreements in existence, but only the 2012 original operating agreement and the 2012 amended operating agreement were entered into the record.

{¶4}   Article V of the original operating agreement, entitled "Membership Withdrawal and Transfer Provisions," provides:

(2)     Restrictions on the Transfer of Membership: A member shall not

transfer his or her membership in the LLC unless all non-transferring

members in the LLC first agree to approve the admission of the

transferee into this LLC. Further, no member may encumber a part or

all of his or her membership in the LLC mortgage, pledge, granting of a

security interest, lien, or otherwise, unless the encumbrance has first been approved in writing by all other members of the LLC.

Notwithstanding the above provision, any member shall be allowed to assign an economic interest in his or her membership to another person without the approval of the other members. Such an assignment shall not include a transfer of the member's voting or management rights in this LLC, and the assignee shall not become a member of the LLC.

{¶5} Article VII, entitled "General Provisions," provides:

(3) All Necessary Acts: Any member individually or all members jointly and Officers of this LLC are authorized to perform all acts necessary to perfect the organization of this LLC and to carry out its business operations expeditiously and efficiently. * * * other officers, or all members jointly of the LLC, may certify to other businesses, financial institutions and individuals as to the authority of one or more members or officers of this LLC to transact specific items of business on behalf of the LLC.

{¶6} The 2012 "Certification of Authority," filed with the original operating agreement in Ohio, states:

This LLC is managed by its Members * * * Each of these persons has managerial authority of the LLC and is empowered to transact business on its behalf.

{¶7} Later in October 2012, Perron signed a "Sale and Assignment Agreement," purporting to assign all of Freedom Fund's membership interest to Loan

Buddies, an Idaho LLC, as collateral for a loan to acquire real property in Ohio. Julie Myers, the manager of Loan Buddies, was named Freedom Fund's new manager.

{¶8} The real property located at 340 Glensprings Drive, City of Springdale, Hamilton County, Ohio 45246 ("Glensprings property") was one of the properties that Freedom Fund acquired with the loan. The parties also signed an "Option Agreement," which allowed Perron to buy the membership interest back once the loan was repaid. The record is devoid of any documents showing that Greenwalt or the trust conveyed any of their interest to Loan Buddies.

{¶9} In November 2012, Loan Buddies filed an amended operating agreement with the Idaho secretary of state to convert Freedom Fund from a member-managed LLC to a manager-managed LLC. Myers purportedly amended the filings to make Loan Buddies the sole member of Freedom Fund and to name herself manager "responsible for the management of the company's business and activities with all rights and powers generally conferred by law or necessary * * *."

{¶10} In October 2015, Greenwalt signed a $90,000 promissory note secured by a mortgage on the Glensprings property. LVREIS, a Nevada private lending corporation, was the holder of the note and mortgage. No other Freedom Fund member signed the mortgage. The parties stipulated that the LVREIS mortgage was recorded with the Hamilton County recorder.

{¶11} In June 2016, eight months after the LVREIS loan was recorded, Myers, signing as the manager of Freedom Fund, recorded a mortgage that was held by Loan Buddies with the Hamilton County recorder.

{¶12} In January 2018, LVREIS paid $23,263.70 in delinquent real estate taxes on the Glensprings property after the Hamilton County treasurer filed for a tax

foreclosure against it, naming Freedom Fund and LVREIS as codefendants. LVREIS subsequently paid another $8,628.82 and $4,501.20 to satisfy the 2019 and 2020 real estate taxes and assessments, for a total of $36,393.09.

## A. The Lawsuit

**{¶13}** In May 2019, Freedom Fund filed a complaint to quiet the title to the Glensprings property in its favor. In its complaint, it alleged that Greenwalt was not a "member, manager, officer or agent of Freedom Fund" when he signed the LVREIS mortgage, and that Greenwalt had no authority to do so.

**{¶14}** In August 2019, LVREIS (1) answered Freedom Fund's complaint, (2) counterclaimed to quiet title, and for declaratory judgment, breach of note, and foreclosure; and (3) filed a third-party complaint against Greenwalt.

## B. The Trial

**{¶15}** The parties confirmed that there was no stipulation as to who actually received the money loaned by LVREIS.

### Gary Clark's Testimony

**{¶16}** Clark, a member of Loan Buddies, testified that Greenwalt and Perron were the faces of Freedom Fund and the "boots on the ground" in Ohio from 2012 until 2016. He stated that Perron and Greenwalt had no authority to mortgage the Glensprings property. Clark testified that he did not know who paid the delinquent taxes on the Glensprings property until the matter had been dismissed.

**{¶17}** Clark conceded that there was no document signed by both Perron and Greenwalt transferring their membership interest in Freedom Fund.

**{¶18}** Clark testified that Loan Buddies filed a mortgage on the Glensprings property in 2016—eight months after the LVREIS mortgage was signed—because its

5

attorney told them to. Clark further testified that Freedom Fund never received any of the proceeds from the LVREIS loan.

<u>Richard P. Turner's Testimony</u>

{¶19} Turner, the title agent who handled the closing on the 2015 LVREIS mortgage, testified that:

> There was an issue with Ray Perron. * * * there was a delay in the funding of the loan because he was expected to sign that guaranty * * * there is no signature in the file. I thought that was resolved because they funded the loan at that point.

{¶20} Upon the court's inquiry as to whether the title company had disbursed the funds and to whom the funds were disbursed, Turner testified:

> * * * there was a simultaneous closing with an entity wholly owned by Jay Greenwalt and Ray Perron by the name of Vendi, LLC. At the same time that they closed this transaction with us they bought another property.

<u>Trial Court's Judgment</u>

{¶21} The trial court first found that Freedom Fund had no authority to transfer its members' interests to Loan Buddies under the 2012 assignment agreement. It determined that the 2012 assignment agreement conveyed no part of Greenwalt's membership interest—or that of the trust—and that it may have been effective only to convey Perron's 47.5 percent interest, by estoppel, because he signed it on behalf of Freedom Fund. The court concluded that Greenwalt had retained his membership interest "along with whatever authority he had as a member."

6

{¶22} The trial court further found that, because Loan Buddies was not Freedom Fund's sole member, the amended operating agreement did not strip Greenwalt of his authority as a member.

{¶23} The court analyzed Idaho Code Section 30-25-407(b)(4) and R.C. 1705.25(A)(2) and determined that Greenwalt's mortgaging Freedom Fund's assets for another company's benefit was outside of the ordinary course of business. Further, it determined that LVREIS knew that Greenwalt was purchasing property for another company with the proceeds of the loan without any benefit flowing to Freedom Fund. Therefore, it concluded that Greenwalt had no authority, actual or implied, to mortgage the Glensprings property.

{¶24} Moreover, the trial court concluded that Freedom Fund's knowledge of the mortgage and LVREIS's payment of the real estate taxes did not amount to Freedom Fund ratifying the mortgage because it was not "fully informed of all of the material facts to the agent[']s action." The court found that the facts did not establish that Freedom Fund knew that funds were used to purchase property for a different company. Freedom Fund's knowledge of the mortgage and payment of taxes was insufficient to show that Freedom Fund was fully informed of Greenwalt's self-dealing, and therefore did not establish ratification.

## Law

{¶25} The standard of review following a civil bench trial is whether the trial court's judgment is against the manifest weight of the evidence as supported by competent, credible evidence. *CyrusOne, LLC v. Great Am. Ins. Co.*, 2021-Ohio-1971, 174 N.E.3d 41, ¶ 48 (1st Dist.). Under a manifest-weight-of-the-evidence review, every

7

reasonable presumption must be made in favor of the judgment and the findings of fact. *Id.*

{¶26} The interpretation of statutes and written contracts are questions of law that are reviewed de novo. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9 (statutory interpretation is a matter of law reviewed de novo); *Hyde Park Circle, L.L.C. v. Cincinnati*, 2016-Ohio-3130, 66 N.E.3d 99, ¶ 15 (1st Dist.) (the interpretation of contracts is reviewed de novo).

{¶27} Contracts that are clear and unambiguous will be enforced according to their terms. *Retirement Corp. of Am. v. Henning*, 1st Dist. Hamilton No. C-180643, 2019-Ohio-4589, ¶ 18. "A court must construe a contract against its drafter, but when the terms are unambiguous and clear on their face, the court need not look beyond the plain language of the contract to determine the rights and obligations of the parties." *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 36, quoting *Beasley v. Monoko, Inc.*, 195 Ohio App.3d 93, 2011-Ohio-3995, 958 N.E.2d 1003, ¶ 30 (10th Dist.).

## Analysis

{¶28} In its sole assignment of error, LVREIS asserts that the trial court erred by quieting title in the Glensprings property in favor of Freedom Fund and by finding that the LVREIS mortgage on the Glensprings property was void.

### A. Greenwalt Remained a Member of Freedom Fund

{¶29} Idaho Code Section 30-25-105 provides that with some exceptions, an LLC's operating agreement governs the LLC's and its members' rights, duties, relationships, activities, and conditions for amending the operating agreement.

Moreover, "to the extent the operating agreement does not provide for a matter described in subsection (a) of this section, this chapter governs the matter."

**{¶30}** Thus, under Idaho law, the express terms of an LLC's operating agreement controls over statute. Ohio law is similar—R.C. 1705.081(A) provides that an LLC's operating agreement governs the LLC's relationships. Therefore, applicable state laws are defaults and only control where an LLC's operating agreement is silent.

**{¶31}** The trial court correctly concluded that Greenwalt remained a member of Freedom Fund. Article V(2) of the operating agreement states that a member cannot transfer his or her membership in Freedom Fund unless all of the nontransferring members approve the transfer. The record does not contain approval by Greenwalt or the trust, as the nontransferring members, to permit any member to transfer membership. Even if Perron successfully transferred his own interest in Freedom Fund, Greenwalt and the trust remained members because neither consented to transferring their interests.

### B. Greenwalt Had Authority to Mortgage the Glensprings Property

**{¶32}** Generally, when an agent enters into a contract on behalf of a principal, the principal will be bound by the terms of that contract, so long as the agent was acting with actual or implied authority to enter into the contract. *Mtge. Network, Inc. v. Ameribanc Mtge. Lending, LLC*, 177 Ohio App.3d 733, 2008-Ohio-4112, 895 N.E.2d 917 (10th Dist.).

**{¶33}** The amended operating agreement that Loan Buddies filed with the Idaho secretary of state—which purported to convert Freedom Fund from a member-managed LLC to a manager-managed LLC, named Loan Buddies as the sole owner of Freedom Fund, and named Myers manager of Freedom Fund—was invalid because

9

Greenwalt had not transferred his interest. As such, we look to relevant statutory provisions and original operating agreement to determine whether Greenwalt had authority to mortgage the Glensprings property.

Actual Authority

{¶34} Express authority is authority that is "directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms." (Citations omitted.) *Nee v. State Industries, Inc. Express*, 2013-Ohio-4794, 2 N.E.3d 1290, ¶ 63 (8th Dist.). Implied authority may also arise from the express delegation of actual authority and carries with it the power to do all that which is reasonably necessary to carry into effect the power actually conferred. *Id.*

{¶35} Freedom Fund's original operating agreement, which names Greenwalt, Perron, and the trust as members of Freedom Fund, specifically states that "[t]his LLC shall be managed by any member individually or all members jointly."

{¶36} Article VII of the original operating agreement allowed individual members to "perform all acts necessary to carry out its business operations expeditiously and efficiently." Further, Greenwalt individually could certify to financial institutions that he had authority to "transact specific items of business on behalf of the LLC."

{¶37} The trial court relied on Idaho Code Section 30-25-407, which requires affirmative consent of all members to take action outside of an LLC's ordinary course of business.

{¶38} As discussed above, Freedom Fund's operating agreement controls Greenwalt's authority, other than when the operating agreement is silent. Moreover,

10

Freedom Fund's business purpose was to acquire notes and real estate. Its operating agreement gave members the authority to carry on the business of Freedom Fund jointly or individually.

**{¶39}** Greenwalt's acts—regardless of who benefitted—were encompassed in Freedom Fund's business purpose. Greenwalt was authorized to transact Freedom Fund's business (acquiring notes and real estate) and to certify to LVREIS that he had authority to mortgage the Glensprings property.

**{¶40}** Additionally, former R.C. 1705.35 bolsters LVREIS's position: "Instruments and documents providing for the acquisition, mortgage, or disposition of property of a limited liability company are valid and binding upon the company if the instruments or documents are executed by one or more members of the company * * *."

**{¶41}** Former R.C. 1705.35 does not conflict with any provision in the operating agreement. It is clear that Greenwalt was a member of Freedom Fund when he signed the documents with LVREIS. Therefore, former R.C. 1705.35, in conjunction with Articles II and VII of the original operating agreement, renders Greenwalt's signature on the mortgage valid and binds Freedom Fund.

**{¶42}** LVREIS's sole assignment of error is sustained.

## Conclusion

**{¶43}** Greenwalt had actual authority to execute the LVREIS loan documents. Therefore, we do not analyze apparent authority or ratification. We reverse the trial court's judgment and remand this matter to the trial court to conduct proceedings consistent with this court's opinion.

11

Judgment reversed and case remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion